UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

Mohamed A. El Rafaei                                    Case No. 20-12583-KHK

Debtor.                                                 (Chapter 11)

## MEMORANDUM OPINION

This matter is before the Court on the motion of Hanan Khalil (the "Movant" or "Ms. Khalil") for entry of an order directing the appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104 (Docket No. 133). The Court held an evidentiary hearing on the motion on November 16-17, 2021. At core, Ms. Khalil asserts that appointment of a trustee is appropriate because the Debtor has grossly mismanaged the estate and because he has failed to pursue avoidance actions for transfers made to insiders. After reviewing the evidence and having considered the arguments of counsel, the Court finds that cause exists for the appointment of a trustee and that such appointment is in the best interest of the creditors and other interests of the estate.

### Findings of Fact

Prior to the petition date, the Debtor held an interest in three business entities and continues to do so. One of the entities is Design 2 Build, LLC, a Virginia company that is wholly owned by the Debtor and that he uses to engage in the business of interior design and construction management for residential and commercial projects in the D.C. area. Another entity is Socialize America, LLC, a Virginia company that is wholly owned by the Debtor. Socialize America has never conducted business but owns a bank account. Day 1 Trial Transcript (Tr.), pp. 49-50. The

1

third entity is Café Concepts, LLC, a Virginia company owned by the Debtor and Anis Rhanime. Mr. Rhanime is the Debtor's business partner and the spouse of Mr. El Rafaei's first cousin. Day 1 Tr., p. 34. For purposes of this proceeding, the Debtor has stipulated that Mr. Rhanime is an insider of the Debtor. Doc. No. 179 - Debtor's Opposition, p. 8. The Debtor did not file Rule 2015.3 reports for any of his business entities when he filed this case. Nor has he filed personal tax returns for 2019 or 2020. Day 1 Tr., p. 77.

In the year immediately preceding the filing of this bankruptcy, the Debtor borrowed $1,156,000 from Mr. Rhanime. Day 2 Tr., pp. 35-37. The Debtor deposited the funds into an account he set up for Socialize America. Day 1 Tr., p. 51. He made two payments on the loan for $100,000 and $475,000 respectively before filing this case. As a result, Mr. Rhanime has filed a proof of claim for $708,994.48, which represents the remainder due on the loan including interest. See Proof of Claim No. 13.

Café Concepts, LLC has been developing and building out a new restaurant facility in Tysons Corner, Virginia. The Debtor and Mr. Rhanime disagree on their percentages of ownership in the company. The Debtor's Schedule B indicates he owns a 50% share of the company. Doc. No. 24, p. 7. He contributed $32,000 to Café Concepts before filing for bankruptcy, and $196,261 to the company post-petition for a total investment of $228,261. Day 2 Tr., pp. 72-73; Ex. G - Post Bankruptcy Expenditures. By contrast, Mr. Rhanime contributed $393,992 to the company before the petition date and $264,467 post-petition for a total of $658,459. Day 2 Tr., p. 73. At trial, Mr. Rhanime testified that although the parties originally agreed to 50-50 ownership of Café Concepts, the Debtor's ownership interest might be subject to adjustment because Mr. El Rafaei has not contributed his 50% share of the investment capital. Day 2 Tr., pp. 29-30. Mr. Rhanime also

2

estimated that an additional $240,000 would be needed to complete and open the restaurant and that he alone would have to supply those funds. Day 2, Tr., p. 75.

In 2017, Mr. El Rafaei wanted to purchase residential property located at 11940 Escalante Court in Reston, Virginia, but he did not qualify for a mortgage. His uncle, Dr. Said A. Shehata, a resident of California, agreed to purchase the property and to lease it to the Debtor with an option to buy if Mr. El Rafaei agreed to make the down payment and the monthly mortgage payments. For purposes of this proceeding, the Debtor has stipulated that Dr. Shehata is an insider of the Debtor. Doc. No. 179, p. 8. The Debtor provided the $90,000 down payment on the property with funds borrowed from his sister. Day 1 Tr., p. 37. Dr. Shehata obtained a loan for $352,000 and along with the Debtor's down payment, purchased the property for $425,000 on April 10, 2017. Id. at 38-39; Ex. 4 – Deed of Trust [Doc. No. 181-8]. Under the Lease Purchase Agreement signed by the Debtor and his wife, Mr. El Rafaei agreed to make the mortgage payments on the property in full to purchase the property from Dr. Shehata. Ex. 2 - Lease Purchase Agreement [Doc. No. 181-6, pp. 1-6].

In December 2019, the Debtor decided to exercise his option to buy the Reston home from Dr. Shehata by paying off the mortgage on the property. Day 1 Tr., p. 47. To do so, he transferred $335,458 of the Rhanime loan proceeds to Dr. Shehata. Day 1 Tr., p. 52; Ex. 34 – Wells Fargo Checking Account [Doc. No. 186-23, p. 2]. Thereafter, Dr. Shehata paid off the mortgage on the residence in full and in April 2020, he transferred the Reston home free of liens to the Debtor by Deed of Gift. Day 1 Tr., p. 52; Ex. 28 - Certificate of Satisfaction [Doc. No. 186-17]; Ex. 5 - Deed of Gift [Doc. No. 181-9].

When this case was filed, the Debtor's businesses were not generating revenue sufficient to pay him for his services thus rendering him unable to meet his living expenses or fund his

business operations. Day 1 Tr., pp. 79-81. To remedy this, on December 22, 2020, the Debtor obtained this Court's approval to sell the Reston home to generate funds to meet these expenses. The sale produced net proceeds of $464,677.40. Doc. No. 103 - Report of Sale. The Debtor has used all the proceeds of sale to meet his living expenses and fund costs associated with his businesses and this chapter 11 case. At the time of trial, he asserted he had spent $72,982 on Design 2 Build expenses, $196,261 on Café Concepts expenses, $89,255.40 on personal expenses and $96,945 on legal expenses for a total of $455,444.40. Ex. G [Doc. No. 194].

From the petition date up through the date of trial, with the sole exception of the month in which the estate received the proceeds from the sale of the residence, the Debtor's filed operating reports have shown a negative cash flow for each month.[1] At the time of trial, the Debtor had filed at least seven of those reports late, and despite the Court's statements in prior hearings regarding the importance of timely filing operating reports, the October operating report was not filed until December 30, 2021. To date, the Debtor has not filed monthly operating reports for the months of November 2021 through April 2022.

The Debtor has also incurred and repaid debts to family members during this case. In December 2020, he borrowed $3,500 from his mother and sister that he did not disclose in the monthly operating report for that month. Day 1 Tr., pp. 75-77. In February 2021, the Debtor repaid a loan to his cousin, Mona Wahab, in the amount of $788, without disclosure or Court approval. Day 1 Tr., p. 90:18-23. The Debtor apparently also borrowed from and repaid loans to

---

[1] See Exhibits 14 (showing negative $1,250), 16 (negative $46,366.96), 17 (negative $55,784.16), 26 (negative $57,111.02), 27 (negative $39,581.85); Doc. No. 144-1 (negative $63,236 and indicating that Debtor has been paying expenses for two new projects in advance); Doc. No. 162-1 (negative $63,623 and indicating that Debtor is continuing to incur business expenses); Doc. No. 166-1 (negative $91,666.98 and same); and Doc. No. 190 (negative $25,470).

Mr. Rhanime since filing for bankruptcy that he did not disclose in his monthly operating reports. Day 2 Tr., pp. 89-90.

The Debtor made two notable family excursions while this case has been pending, including a trip to California for a wedding in March of 2021. He spent between $2,500 and $3,000 on that trip. The Debtor also took a three-week vacation to Egypt with his family to visit his father who had recently undergone knee surgery. He testified that his father paid for this excursion; however, the Debtor could not explain how he spent $13,800 that he withdrew from his debtor-in-possession ("DIP") account in the weeks just prior this trip. Day 1 Tr., pp. 85-87. At trial, Mr. El Rafaei acknowledged making numerous ATM withdrawals from the DIP account since filing this case but failed to explain why these expenditures were necessary or reasonable. *Id*. at 83-84, 89.

## Conclusions of Law

Section 1104(a)(1) of the Bankruptcy Code provides that the Court shall appoint a trustee for "cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management." 11 U.S.C. §1104(a)(1). The listed causes are not exclusive. In re IPofA West Oaks Mall, LP, No. 07-33649-KRH, 2007 WL 3223295, at *4 (Bankr. E.D. Va. Oct. 29, 2007). "[T]he concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide range of conduct.... Implicit in a finding of incompetence, dishonesty, etc., for purposes of section 1104(a)(1), is whether the conduct shown rises to a level sufficient to warrant the appointment of a trustee." In re General Oil Distributers, Inc., 42 B.R. 402, 409 (Bankr. E.D.N.Y. 1984). The Court has discretionary authority to determine whether conduct rises to the level of "cause." Comm. of Dalkon Shield Claimants v. A.H. Robins Co. Inc., 828 F.2d 239, 242. (4th Cir. 1987). The movant must prove mismanagement of estate property by clear and convincing

evidence. In re Tanglewood Farms, Inc., No. 10-06719-8-JRL, 2011 WL 606820, at *2 (Bankr. E.D.N.C. Feb. 10, 2011).

The Court may also appoint a Chapter 11 Trustee if the appointment is in the interest of creditors, any equity security holders, and other interests of the estate. 11 U.S.C. § 1104(a)(2). The standard under Section 1104(a)(2) of the Bankruptcy Code is more flexible than those under Section 1104(a)(1) and the determination lies within the sound discretion of the Bankruptcy Court. In re IPofA West Oaks Mall, LP, No. 07-33649-KRH, 2007 WL 3223295, at *4 (Bankr. E.D. Va. Oct. 29, 2007). Under Section 1104(a)(2), the Court uses a cost/benefit analysis and general principles of equity to determine whether appointment of a trustee is in the best interests of the estate and all the constituents involved. 11 U.S.C. § 1104(a)(2); See 7 Collier on Bankruptcy ¶ 1104.02[3][d][ii]. In balancing these anticipated benefits and accompanying costs, the following factors are given consideration: "(1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for rehabilitation; (3) whether the business community and creditors of the estate have confidence in the debtor; and (4) whether the benefits outweigh the costs." In re LHC, LLC, 497 B.R. 281, 293, 309–10 (Bankr. N.D. Ill. 2013; In re Bergeron, No. 13-02912-8-SWH, 2013 WL 5874571, at *9 (Bankr. E.D.N.C. Oct. 31, 2013). See also In re Drew Transportation Servs., Inc., No. 16–02609, 5–JNC, 2016 WL 6892459, at *2 (Bankr. E.D.N.C. July 7, 2016) (holding that "a debtor has a duty in bankruptcy to be truthful and demonstrate candor in its representations to the court and parties-in-interest ... In a case involving a chapter 11 debtor-in-possession, parties in interest need reassurance that the debtor-in-possession will operate the business honestly and will investigate and administer assets in accordance with the Code.").

A debtor-in-possession also assumes a "duty to protect and conserve property in its possession for the benefit of creditors." In re Ionosphere Clubs, Inc., 113 B.R. 164, 169 (Bankr.

S.D.N.Y. 1990). The Fourth Circuit has found the appointment of a trustee is warranted when the Debtor has demonstrated that he is unable or unwilling to perform his obligations as an independent fiduciary. In re J.T.R. Corp., 958 F.2d 602, 605 (4th Cir. 1992).

Ms. Khalil's assertions that Mr. El Rafaei's post-petition conduct demonstrates gross mismanagement are compelling. The Debtor's monthly operating reports do not disclose any income from his businesses. At trial, Mr. El Rafaei testified that he has received compensation from Design 2 Build, but no income appears on any of the filed operating reports which raises doubts about the Debtor's credibility and trustworthiness. In fact, the estate has operated with substantially negative cash flow throughout this case, except for the month of January 2021 when the estate received $464,677.40 from the proceeds of sale of the Debtor's home. Between February and October of 2021, the Debtor transferred a total of $269,244 from the DIP account to business entities that have contributed nothing in return to the estate. The amount transferred to Café Concepts is particularly disturbing since the record is not clear what percentage of that company is owned by the Debtor. Mr. El Rafaei's decision to pour more than half of the estate's assets into business entities that have returned no income to the estate demonstrates gross mismanagement and a failure to conserve estate property for the benefit of creditors. Moreover, this conduct represents an ongoing conflict of interest that necessitates appointment of a trustee in this case. A conflict of interest is sufficient cause for appointment of a trustee. See In re Concord Coal Corp., 11 B.R. 552, 554-55 (Bankr. S.D.W. Va. 1981) (finding a conflict of interest sufficient to appoint a Trustee where the Debtor had "many competing business interests and the potential for inter-company dealing" and where there was "a record of inter-company transactions involving the extension of credit and transfer of assets" making it "highly improbable that the Debtor can gain and maintain the confidence of secured creditors and lenders.").

The Debtor's conduct implicates several factors to be considered in weighing the benefits and costs that accompany the appointment of a trustee. For example, the Debtor's filed operating reports do not disclose that Mr. El Rafaei has borrowed money or repaid relatives while this case has been pending in violation of his duty to be candid and honest with creditors and this Court. At trial, Mr. El Rafaei could not explain how he spent thousands of dollars that he withdrew from his DIP account through ATM transactions. Id. at 83, 84 and 89. While the individual amounts withdrawn may have been small, the number of transactions along with the Debtor's inability to account for them is evidence of incompetence in a fiduciary. Even Mr. Rhanime, has expressed doubts about his business partner's acumen for accounting and numbers. Day 2 Tr., p 24. Furthermore, the Debtor has exercised poor business judgement by taking vacations using estate funds which has given rise to mistrust. Mr. El Rafaei's conduct raises serious doubts about whether he can scrupulously administer this estate in compliance with the Bankruptcy Code and weighs in favor of appointment of a trustee.

The Debtor's failure to timely file operating reports is further evidence that he is unwilling or unable to perform his fiduciary duties and demonstrates gross mismanagement of the estate. These reports are the lifeblood of the case and without them neither the Court, nor any interested party can fully evaluate the likelihood of a successful reorganization. Indeed, the complete dissipation of estate funds based on the last filed operating report and the lack of reports since December 2021 leaves the Court to wonder whether this chapter 11 case can be resuscitated.

Finally, Ms. Khalil asserts the Debtor has failed to pursue preferential transfers made to Dr. Shehata and Mr. Rahnime in dereliction of his fiduciary responsibility. In reply, the Debtor argues that the deadline to file avoidance actions is several months away, and in his business judgment, he has chosen to defer his election to initiate such proceedings for fear of compromising

8

Case 20-12583-KHK    Doc 238    Filed 07/22/22    Entered 07/22/22 17:11:39    Desc Main
                     Document      Page 9 of 10

his current business dealings with Mr. Rhanine before the restaurant opens. The Court will not prematurely adjudicate these matters by issuing substantive rulings on the merits given that avoidance actions have not been filed at this time. However, the Court notes that of the questioned transactions, the Rhanime transfers are the most troubling given that on their face, they demonstrate repayment of loan funds to an insider within the preference period. However, it suffices to say that to the extent a prima facie case has been raised here, the Court has no confidence that this Debtor will initiate an avoidance action against Mr. Rhanime given that doing so would have a detrimental effect on his business relationship with his partner whether the restaurant opens prior to the deadlines provided in 11 U.S.C. § 546(a). This conflict alone is indisputable and cries out for independent scrutiny.

In summary, the Court finds that the Movant has met her burden by proving with clear and convincing evidence that the Debtor has failed to perform his fiduciary duties and that his actions or failures to act constitute gross mismanagement of the estate giving rise to cause to appoint a trustee under 11 U.S.C. §1104(a)(1). Moreover, the Debtor has failed to protect and preserve the largest asset of the estate to date and has demonstrated a conflict of interest between the estate, his personal interests, and his interests in other separate business ventures. This behavior indicates that the appointment of a trustee is in the best interests of the estate under Section 1104(a)(2). On balance, the benefits of appointing a trustee outweigh the costs of doing so. The Court has no confidence that the Debtor will suddenly embrace his fiduciary responsibility to be diligent in his recordkeeping or exercise good judgement in safeguarding estate assets. An independent trustee will be candid in evaluating the viability of this case going forward and will be able to competently investigate, and if necessary, prosecute preferential transfers that might bring funds into the estate.

Accordingly, the Court will enter an Order instructing the U.S. Trustee to appoint a Chapter 11 Trustee in this case.

Date: Jul 22 2022

/s/ Klinette H Kindred

Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: July 22, 2022

Mailed copies to:

Mohamed A. El Rafaei
9203 Old Courthouse Rd.,
Vienna, VA 22182
*Debtor*

Electronic copies to:

Christopher L. Rogan
James P. Campbell
*Counsel to Debtor*

Charles B. Peoples
*Counsel to Hanan Khalil*

Jack Frankel